UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIO CLARKE,

        Plaintiff,                      CIVIL ACTION NO. 09-11246

vs.                                         DISTRICT JUDGE BERNARD A. FRIEDMAN
                                             MAGISTRATE JUDGE DONALD A. SCHEER

RANDY UMBARGER, et.al.,

        Defendants.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

<u>RECOMMENDATION</u>: Defendants' Motion for Summary Judgment should be GRANTED, as Plaintiff has failed to establish any violations of his federally secured constitutional rights by the alleged acts of excessive and unnecessary force by the individual Defendants.

\* \* \*

Plaintiff, while incarcerated at the St. Louis Correctional Facility (SLF) in St. Louis, Michigan,[1] was allowed to proceed in forma pauperis and filed the instant Complaint, pursuant to 42 U.S.C. § 1983, on April 3, 2009, against nine Michigan Department of Corrections (MDOC) officials employed at SLF at the time the alleged incidents occurred. All the Defendants were sued in their individual capacities.

Plaintiff alleged that on April 18, 2008, while he was incarcerated at SLF, Defendants Umbarger, Zemla, Ott and Kerkau assaulted him without cause, using excessive and unreasonable force in an attempt to inflict cruel and unusual punishment after he

---

[1] Plaintiff is currently incarcerated at the Woodland Center Correctional Facility, 9036 E M-36, Whitmore Lake, Michigan 48189.

complained that his handcuffs were too tight. Specifically, Plaintiff claimed that he was assaulted by the four corrections officers while being escorted back to his cell following the conclusion of a disciplinary hearing. He maintained that these Defendants maliciously and sadistically beat, kicked and knocked him to the floor without provocation. Plaintiff claimed that his arms and legs were yanked and twisted, and that he was stabbed in his right arm with the tip of his handcuffs. He asserted that he was not being assaultive toward the four Defendants, and therefore the use of such force against him was excessive.

Plaintiff asserted that Defendants Havelka, McCormick and Williams observed the assault upon him, but that they failed to protect him from the other officer's actions. Plaintiff averred that Warden Ludwick and Deputy Warden Washington-Best failed to adequately investigate the incident. As a result of the alleged assault, Plaintiff claimed that he suffered undisclosed injuries. Contending that his rights under the Eighth and Fourteenth Amendments had been violated, Plaintiff sought monetary damages.

Defendants filed a Motion for Summary Judgment, on July 9, 2009, based upon a failure to state a claim of cruel and unusual punishment. In support of their Motion for Summary Judgment, Defendants submitted separate affidavits, critical incident reports, medical records and narrative descriptions regarding this incident.

These records revealed that on April 18, 2008, Plaintiff was being escorted back to his cell following a disciplinary hearing when he suddenly stopped walking and began resisting efforts to keep him moving. Plaintiff refused a direct order from Defendant Umbarger to peacefully continue walking towards his cell. When Plaintiff became verbally belligerent and adamantly refused to return to his cell, Defendants Umbarger, Ott, Kerkau and Zemla wrestled him to the floor and physically carried him back to his cell.

**2**

Defendant Umbarger acknowledged that he initially applied a pressure point technique in an effort to wrestle Plaintiff to the ground. Defendants Umbarger, Ott, Kerkau and Zemler stated, in their respective affidavits, that because Plaintiff continued to resist and fight, they were forced to pick him up and carry him back to his cell. Defendant Laura McCormick, a resident unit supervisor, stated that she videotaped the incident for later viewing at a disciplinary hearing. (See Affidavit of Officers Umbarger, Ott, Kerkau, Zemler and McCormick, attached to Defendants' Motion for Summary Judgment).

According to the Critical Incident Report prepared after the altercation, a nurse was summoned to Plaintiff's cell when he complained of joint pain and discomfort. Barbara Hessbrook reported that Plaintiff was unable to flex his right wrist, and that he had suffered two superficial scratches on his right arm. An X-ray of the arm showed no evidence of fracture or dislocation. Plaintiff was treated conservatively, and he did not experience any long term consequences from the incident. (See Critical Incident Report and Medical Progress Reports, attached to Defendants' Motion for Summary Judgment).

Plaintiff received a misconduct citation for assault upon Defendant Umbarger. He was subsequently found guilty of major misconduct following a disciplinary hearing, and he was sentenced to 30 days loss of privileges and good time credits. (See Major Misconduct Hearing Report, attached to Summary Judgment Motion). Plaintiff filed a response to Defendants' Motion for Summary Judgment on August 17, 2009, reiterating that the he had been maliciously and sadistically beaten, kicked and knocked him to the floor without provocation, resulting in long term disability.

SUPERVISORY RESPONSIBILITY

The general rule is that a claim for monetary damages under § 1983 requires the averment of some specific, personal wrongdoing on the part of the individual defendant. Theories of vicarious liability or respondeat superior are not sufficient. Rizzo v. Goode, 423 U.S. 362, 376 (1976). In addition, it is obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by the Cruel and Unusual Punishment Clause. Whitley v. Albers, 475 U.S. 312, 319 (1986).

Defendants Ludwick (Warden at SLF), Washington-Best (Assistant Deputy Warden), Havelka (Resident Unit Manager), Williams (Assistant Resident Unit Supervisor) and McCormick (Assistant Resident Unit Supervisor) were sued because of their respective positions of authority and supervisory responsibilities within the prison. The Complaint does not contain a single allegation of personal wrongdoing on the part of these individuals. The mere fact that a supervisory person is in a position of authority does not support the imposition of liability against him or her under § 1983. A supervising official's failure to supervise, control or train an offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it." Poe v. Hayden, 853 F.2d 418, 429 (6th Cir. 1988).

To the extent Plaintiff complains about a failure to respond to his grievances, the general rule is that a combination of knowledge of a prisoner's grievances and failure to respond to or remedy the complaints is insufficient to impose liability upon supervisory personnel under § 1983. Id.

Defendants Ludwick, Havelka, Williams, McCormick and Washington-Best were merely part of the prison administration during the relevant time. There is no evidence that

**4**

any "policy" personally promulgated by them had anything to do with Plaintiff's treatment. Moreover, Plaintiff has not shown that the Defendants had "actual knowledge of a breakdown in the proper workings of the department." See Hill v. Marshall, 962 F.2d 1209, 1213 (6th Cir. 1992). Absent a showing that they were personally or directly involved, Defendants Ludwick, Havelka, Williams, McCormick and Washington-Best should not be held liable. Accordingly, the claims against them should be dismissed regardless of the constitutional sufficiency of Plaintiff's actual treatment.

CLAIMS OF EXCESSIVE FORCE

Claims of excessive force against convicted prisoners by prison guards are to be raised and analyzed exclusively under the Eighth Amendment's cruel and unusual punishment clause. Cornwell v. Dahlberg, 963 F.2d 912, 915-916 (6th Cir. 1992). In Whitley v. Albers, 475 U.S. 312 (1986), the Supreme Court held that what is necessary to establish unnecessary and wanton infliction of pain varies according to the nature of the alleged constitutional violation. 475 U.S. at p. 320. It concluded that, in a prison disturbance situation:

> [T]he question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

> 475 U.S. at pp. 320-321.

In Hudson v. McMillian, 503 U.S. 1 (1992), the Court extended this rule to single-prisoner incidents:

> Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need to maintain or restore discipline through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate

**5**

> the principle that 'prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security' . . . . In recognition of these similarities, we hold that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley: whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.
>
> 503 U.S at 6.

The Court went on to explain that:

> Under the Whitley approach, the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur' . . . . In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it . . . . When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . . This is true whether or not significant injury is evident.  503 U.S. at 7.

Accord, Cornwell, supra, and Caldwell v. Moore, 968 F.2d 595, 599-601 (6th Cir. 1992).

In the instant case, Plaintiff has failed to present a triable issue as to whether Defendants Umbarger, Zemla, Ott, and Kerkau acted maliciously and sadistically to cause him harm. According to the affidavits and supporting documentation submitted by these Defendants, Plaintiff precipitated the altercation by refusing a direct order to continue walking to his cell while under escort. After verbally abusing Defendants Umbarger, Zemla, Ott, and Kerkau, Plaintiff continued to use force while resisting efforts by the officers to gain control over him.

Plaintiff has failed to demonstrate that the Defendants acted in such a way that their conduct could be characterized as obdurate or wanton during their attempt to restrain and subdue him during the April 18, 2008 altercation. The lack of evidence that he suffered any permanent or severe injuries as a result of being restrained suggests that reasonable force was applied in a good faith effort to restore institutional control, and not for the purpose of causing him harm. Plaintiff does not dispute precipitating the altercation. He acknowledges that he was administratively prosecuted and found guilty of assault on Defendant Umbarger as a result of the encounter[2]. I am persuaded that Plaintiff's bare allegations are insufficient to create a triable issue of fact as to whether these Defendants exhibited a deliberate indifference to a risk of injury when attempting to subdue him.

For all of the foregoing reasons, it is recommended that Defendants' Motion for Summary Judgment be granted, that of Plaintiff denied, and the instant case dismissed. The parties are advised that any objections to this Report and Recommendation must be filed with the Court within ten (10) days after they are served with a copy, or further appeal from Judge Friedman's acceptance thereof is waived.

                                                 s/Donald A. Scheer
                                               DONALD A. SCHEER
                                               UNITED STATES MAGISTRATE JUDGE

DATED: August 27, 2009

---

[2] Notwithstanding Plaintiff's allegation that the major misconduct report filed against him was not completely truthful, a prison inmate has no constitutionally guaranteed immunity from being falsely or wrongfully accused of misconduct which might result in the deprivation of his liberty. The protection against, and remedy for, false accusations is normally an administrative hearing at which the prisoner has the opportunity to explain or challenge the charges. Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986). It is not this Court's function or responsibility to decide matters of credibility, but only to insure that there is "some evidence" to support the administrative findings. Superintendent v. Hill, 472 U.S. 455 (1985); Turner v. Scroggy, 831 F.2d 135, 139-140 (6th Cir. 1987).

## CERTIFICATE OF SERVICE

      I hereby certify on August 27, 2009 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on August 27, 2009: **Mario Clarke.**

                                                  s/Michael E. Lang
                                                  Deputy Clerk to
                                                  Magistrate Judge Donald A. Scheer
                                                  (313) 234-5217